We'll turn to our next case, which is National Resources Defense Council and several states including New York and California, Maryland, versus the National Highway Traffic Safety Administration. Thank you. May it please the Court, I'm Stephen Wu for the State Petitioners. I'd like to reserve two minutes for rebuttal. NHTSA's indefinite delay of the higher CAFE civil penalty should be vacated for at least two independent reasons. First, the delay violates Congress's unambiguous command that the higher civil penalty rate come into effect by August 2016, a command that the agency complied with, and then in this delay decision, reversed. Did the agency state a basis for its authority to delay indefinitely this rule? The basis for the authority here was the inherent authority of the agency to monitor the CAFE program, but that is a plainly insufficient basis for at least two reasons. The one is that courts have rejected, including this court, the argument of inherent authority to delay an already finalized rule. And the second is that the delay rule here does not actually reconcile the agency's position with the statutory schedule in the Inflation Adjustments Act. Again, that act dealt with this precise question, how an agency and when an agency is to update its civil penalties for inflation. So delaying a final rule is itself a final rule, isn't it? That's correct. Well, it is itself a separate administrative action that requires both a compliance with the APA's processes here, and here the agency violated both of those independent requirements. And this court's decision in Abraham makes this perfectly clear. In that case, which was also under the same statute of APCA, the agency attempted to justify a delay of an already finalized rule. I mean, this court said both of these things. First, that there was no inherent authority for the agency to reconsider an already finalized rule. And importantly, this court distinguished the authority to delay a rule based solely on the desire to reconsider it from the actual substantive authority to amend or rescind the rule. I mean, that — This court found they could not do that. And they could not delay the rule, putting aside the question of whether the agency separately could amend or rescind it. And the D.C. Circuit reached a very similar holding more recently in the Clean Air Council case. That was a situation where there's no real dispute that the agency, EPA, has authority to regulate methane emissions from these plants. And yet, what the agency had done there was not to actually impose a replacement regulation, which would have been an exercise of a substantive authority, but instead had pointed to an already finalized rule and said they were going to put that off for a 90-day period in that case. Now that administrative agencies are all creatures of statute, is there any statutory justification for the delay of the CAFE standards, the delay of the penalties? There is not. And to the contrary here, Congress was unambiguous about what it intended agencies to do in this situation. I mean, the CAFE penalty falls squarely into the type of penalty Congress meant to address. Every other agency that was charged with adjusting their fees, have they complied with it except for this agency? I can't answer that question of whether there's been universal compliance. It's very widespread. It's been very widespread. I think some agencies were somewhat delayed. And then Congress's command is unambiguous. It applies to all civil monetary penalties. This is a penalty that's expressed in purely monetary terms. And the problem that Congress meant to address was this precise situation, where a monetary penalty was set in a statute decades ago, and that had lost almost all of its deterrent effect because of inflation. But if it was yours, I don't know if it was yours, or the NRDC said many manufacturers find it cheaper to pay the penalty than to comply with the standards. That's exactly the problem. I mean, just to put it in practical, it's perverse. And to put it in practical terms, the real value of this penalty has been cut in quarter by the intervening years. What Congress intended was a $5 and later $5.50 penalty that would meaningfully promote compliance with the CAFE standards. And now manufacturers are treating it as a cost of doing business. And to put a finer point on this, the problem is only going to get worse because the CAFE standards themselves are becoming stricter over time, meaning that manufacturers will increasingly find an incentive to avoid compliance with those standards. That's the question I want to ask. This case comes to us on expedited consideration, because I assume we're all interested in the 2019 model year. Is it still timely for the 2019 model year if we act with dispatch on this case? Based on the manufacturer's representations, I think the answer is yes. But I do want to emphasize this too, which is even if the 2019 model year is now completed, manufacturers continue to make decisions about 2020 and beyond. We have evidence in the record showing that this is a series of rolling production decisions at least 18 months, but sometimes many years in advance. And the penalty rate is a factor these manufacturers take into account in deciding what technology to put in place. And the state's concern and the environmental petitioner's concern here is that a lower penalty rate here makes manufacturers decide that they'd rather pay a minimal penalty in the future rather than make important technology decisions that will drive down emissions. Thank you. We'll hear with the other petitioners. That's NRDC. Good morning, Your Honors. Ian Fine from NRDC on behalf of environmental petitioners. Mr. Wu focused on two fundamental errors that the agency made here when it indefinitely suspended this important final rule. There's actually a third violation as well, which is that it was arbitrary and capricious. Ms. Wu focused mostly on the first, the lack of statutory authority. But I also want to focus the court on the second one, the lack of notice and comment. That independent grounds for vacatur here is directly controlled by this court's precedent in Abraham. The reasons that the agency invoked for the good cause exception here are precisely the same reasons that this court rejected in NRDC v. Abraham and that the Third Circuit rejected in NRDC v. EPA. An agency's desire to reconsider a rule on the eve of its effective date does not allow an agency to suspend that rule without notice and comment. The third independent grounds for vacatur... The timeline would have been too short for notice and comment. The way they laid out when the rule was to go into effect and when they filed this, it was something like 20 days or 27 days. Explain whether they could have ordered notice and comment. First of all, the agency could have allowed that final rule, the civil penalties rule, to go into effect while it took notice and comment on whether to suspend it. Agencies have done that. They do that all the time. The agency here has never explained why it were in place that, in terms of the effective date, were deadlines that the agency itself imposed. Those are effective dates that the agency set. The agency can't then wait until that deadline is about to expire and say that somehow provides good cause. Very quickly, on the third independent grounds for vacatur, the suspension is also arbitrary and capricious. The agency may have had reasons why it wished to reconsider the civil penalties rule, but the agency had an obligation to separately justify and explain the further action of suspending that rule during the reconsideration. The agency here did not provide that explanation. There's cases on all fours with public citizen v. Steed from the DC Circuit, which struck down an indefinite suspension of a final rule by this very same agency for failing to provide that explanation. That explanation is lacking here as well. If there are no further questions, I will reserve the remainder of my time for rebuttal. Thank you. We'll hear from the agency. Thank you, Your Honor. May it please the Court, Thomas Byron from the Justice Department here on behalf of the government, the respondents. I'd like to start by emphasizing what we've tried to point out in our brief, which is the insignificance of the delay decision that's been challenged here. I want to start by pointing out this goes to both standing and to the effective determination, but only to delay the effective date of its earlier December 2016 decision on reconsideration in light of the agency's determination that it needed to continue the process of reconsideration that it had begun. You had this congressional mandate to do it by a date certain, and you've just ignored that. Well, Judge Porer, I don't think it's fair to say the agency ignored that, so let me talk a little bit about the structure of the statute. We've emphasized the statutory deadline of August 2016, which Congress put in the 2015 act. Made it by two or three days than NHTSA did. Better than NASA, let's just say, because they were a year late. But my point about that, after all, Judge Porer, is that the statutory deadline doesn't disempower an agency from acting after the deadline passes. That's the nature of most deadlines, after all. So what happened here is actually consistent with the statutory scheme. It's not prohibited by Congress. The agency here has relied on the exception in the 2015 act for notice and comment when an interim final rule wouldn't be appropriate because it's necessary to consider the economic consequences of an increase. Now as the agency pointed out in the NPRM that's ongoing, that was issued recently in the rulemaking that's ongoing, there are additional legal considerations that the agency didn't address before about the scope of the 2015 act at all. It may not even apply here. But let's assume for the moment... Challenging the 2015 act? So the agency is considering whether the 2015 act's definition of civil monetary penalties even covers the CAFE civil penalty at all. And even if it does, how it should be reconciled with the provisions in that CAFE statute. Is NHTSA thinking of suing Congress? Judge Pooler, that's not necessary because Congress has given NHTSA the authority to administer the CAFE program. But if you think the program was illegal in its design... Judge Pooler, this is... ...what's the remedy? I'm sorry. So nobody's suggesting anything was illegal other than my colleagues. What we're suggesting is that there are two statutes that need to be interpreted and reconciled and that that process didn't take place before. So that's just an aside, though, because the main point here is that the action that petitioners are complaining about in this court is very narrow and very limited in its effect. What they cannot show is any harm from just the delay decision. What they're trying to show is a delay from what the civil penalty rate will be for model year 19 and later model years. But we won't know that until the ongoing rulemaking, the reconsideration rulemaking, is complete. The agency is going to tell everybody, tell the public, what that civil penalty rate is going to be for 2019 and subsequent years. In any event, we know it's not going to be $5.50 per tenth of an MPG. And so... I'm sorry, Judge Pooler, can you explain why you say that? Why it won't be $5.50? Yes, Your Honor. Because the 2015 Act... First of all, I asked the questions, but I will tell you the answer. It's because the 2015 Act said that the civil penalties were useless because they weren't generating the behavior that was sought. So that we've heard just before that the car manufacturers would rather pay the penalty than change their vehicles. So that conclusory assertion by petitioners not supported by the record in this case, and by the way, Your Honor... I think that's what the manufacturer's green briefs says. They said, we've paid a billion dollars in fees because we didn't meet these standards. Didn't they say that? Aren't they complaining about that? So, Judge Poole, I think what the agency has said... I don't want to characterize what the interveners have said, but what the agency has said is that manufacturers have actually paid a relatively small amount in civil penalties over the years. And that's one of the reasons, by the way, there's good reason to doubt the standing of petitioners. But let me go back to the point, if I may, because I think it answers your question in large part. We will know at the end of the rulemaking process what the civil penalty rate will be. And it's not... I cannot prejudge what the agency is going to do there. No, you wouldn't agree that it's fair to say that it won't be $5. I can't. I can't agree to that, Judge Poole, because that's the very question pending before the agency now. And there are lots of reasons the agency laid them out in the notice of proposed rulemaking why it might not. If you followed the formula that Congress dictated in the 2015 Act, the penalty would be $23 per tenth of an MPG, right? Well, Your Honor, I think... Isn't that what it would? So I think that's what the agency said it would have been. And remember, that formula is not... It doesn't stand alone. So Congress said in the 2015 Act, first of all, 150% maximum, even under an interim final rule, right? So that's why it got... The agency thoughtfully reduced the penalty to $14. Well, Your Honor, so Congress also said, though, and this is the really important part, Congress also said that notice and comment might be appropriate depending on the economic impact of the higher rate. That notice and comment is now ongoing. This is what Congress specifically contemplated. Now, Petitioners argued... But you knew this way back when. You knew this in 2015, 2016. I don't think it's fair to say, Judge Parker, that the agency did know all of these interim final rule, which was conducted without notice and comment. And then you look at the reconsideration decision in December 2016, which was also conducted without notice and comment. My point about Congress's intent is that there is an exception in the 2015 Act for notice and comment that has not... That Congress didn't intend to preclude the agency from using in this circumstance. Petitioners argue that because Congress put a deadline on the interim final rule, it meant to preclude subsequent reconsideration to permit the notice and comment Congress specifically identified in that statute. That's not... It's not a plausible understanding of what Congress must have meant because Congress doesn't ordinarily prohibit agencies from using notice and comment. That's indeed... There's some irony here that Petitioners want notice and comment here but don't want it on the substantive questions. It seems a little odd. A little detour. Could you tell me why NRDC versus Abraham doesn't prohibit you from delaying this rule? Absolutely, Your Honor. So NRDC against Abraham was about a very different statutory scheme. Well, it was still ECPA, wasn't it? So it was... There are a number of titles in EPCA, right? We work by analogy in the common law, don't we? Well, this is not a common law question, Your Honor. This is a question of statutory interpretation. And my point about statutory interpretation is that the CAFE statute was... It stands apart from the Department of Energy Energy Conservation Standards scheme that Congress adopted and allocated to Department of Energy. One of the most significant ways and the most clear distinction of this case from NRDC against Abraham is that in the Department of Energy's Energy Conservation Standards statutory scheme, there's what's called an anti-backsliding rule that prohibits the agency. And this court relied very specifically, repeatedly in its decision in that case on the anti-backsliding provision. In that statutory provision prohibited DOE from reconsidering a rule after it had published the rule. That's what this court held. There's no corollary anti-backsliding provision in the CAFE statute. And therefore, there is no reason to conclude that Congress intended to limit the Well, so, Your Honor, let me rephrase my argument, if I may. My argument is that what the Supreme Court has told us in Fox Television, in Sino Motor Cars, many other cases, indeed in State Farm itself, is that agencies have the authority to undertake notice and comment rulemaking to change previous rules. Yes, they absolutely do. That's the whole point of notice and comment rulemaking in the APA. So that's what's going on here. There's nothing in the statute that precludes it. But the statute that you seek to delay is itself a final rule. The rule vacated, setting the delay is a final rule. And there was no notice and comment. But there was, there are two reasons why that's permissible here, Your Honor. First of all, it was not a legislative rule. It was a procedural rule. It was merely undertaken, and let me put this in context, if I may, because this is significant to why we think this You don't think it's substantive? You think it's only procedural? Yes, Your Honor. And let me see if I can explain why. Why? Yes, Your Honor. So all that the agency did in the delay decision was to prevent the December 2016 reconsideration decision from taking effect because the agency concluded that decision didn't adequately consider a number of issues that had been raised. And the agency said, we need to to give those issues the full airing, including notice and comment that they deserve. So let me just distinguish, then, the December 2016 reconsideration decision from the earlier July 2016 interim final rule, which did, its effective date was not delayed. So just to be clear— It didn't consider the economic impact. No, Your Honor, it did not. That's very clear, that the agency did not consider that in that rule. How did the amount of the fines be reduced from 23 to 14? There was the statutory limitation of 150% increase. But they did some reasoned consideration, or they wouldn't have arrived at 14. No, Your Honor, it was an application of the statutory limit without consideration of economic effects. How did they get to 14 from 23 without considering that 23 would have a deleterious economic impact? I'm happy to find the statutory provision for you, Your Honor, but it says that no increase can be more than 150%. I understand that, but 23 is under 150, isn't it? No, Your Honor, it's not. 550 plus 150% of 550 is 14. That's how the agency concluded that that was the limit. So they met the standard, but they didn't consider the economic impact of 14? That's correct. That's right, Your Honor. And that's what the notice and comment provision in the 2015 Act is designed to accommodate, to permit, and that's what the agency's doing now. So let me, if I may, just wrap up by saying that what the petitioners are seeking here would be ineffectual and have no significance because, let's imagine that, so first of all, it would be ineffectual because the 550 rate was not set during the period of reconsideration, was not set in the rule that they're challenging. It wasn't set in the delay decision. It was set in the accompanying request for comments on reconsideration, issued the same day in the following pages of the Federal Register. But secondly, more importantly, it would be ineffectual because whatever the court, the agency, the public believes that the civil penalty rate is for Model Year 19 right now is not going to matter because by the end of this year, the agency will have concluded its ongoing rulemaking on reconsideration, and the agency then will tell us what it is. That's the dispositive determination of what the civil penalty rate will be for Model Year 2019. Only then, if I may— 2019 cars are coming out in what, December, January? They actually come out in the fall. I think it's in October of this year, Your Honor. We're racing against the clock. No, Judge Pooler, and this is what the agency said in the delay decision itself, if I may just answer this concern— I have one more question for you. Because the agency explained that there would be no practical effect of the delay decision because assessment of civil penalties doesn't take place until sometime after the middle of 2020. And that's how the process works. We cited in our brief— Manufacturers are entitled to know what the penalty will be as they choose what technology goes into the cars. So, Judge Pooler— They don't get any notice here. So, that's a concern that the manufacturers may raise later if they determine that there was inadequate notice somehow. But what my point is, is about standing and about the merits with respect to petitioner's claims. They say that they want to compel a $14 rate for Model Year 2019. But even if they were to do so somehow in this case— And again, my point is that they've not challenged the right thing here because the delay decision doesn't do that by itself. Even if they were, the agency's going to tell us by the end of the year in a final rule what it is, and that's going to supersede— So, if you have not persuaded me that this is a legitimate action, delaying this, what would be the status of the rule? Say we vacate this delay. Right. Say that's one of the options available to us. Sure, Your Honor. What would be in effect? The December rule? So, it's a good question. So, yes, I think the December rule— But it's a good question because it's a hard question that I don't think— I think it demonstrates— I'm going to ask opposing counsel as well. I appreciate that because I've been struggling with that question myself, and here's what I think would happen. One thing they've told us and that we've maintained all along is that NHTSA has the authority to do the reconsideration that's underway now. They don't appear to dispute that in this case. They may dispute it later, but— If we vacate the delay, that wouldn't change at all. Exactly, Your Honor. It would not change. That will continue. This is my point, though, about why it wouldn't matter. So, imagine the court were to— $14 would go into effect, wouldn't it? But only until a final rule is issued. That's my point, Your Honor. So, that's why I think it wouldn't much matter. And it's not even clear, by the way— Wouldn't it matter to the manufacturers making decisions right now? Wouldn't it matter to them? Oh, so I don't know— $14 rather than $5.50? I don't know that it would because— and this goes to the independent decisions they have to make, and one of the things they have to do is make their decisions with the knowledge that the agency in the ongoing rulemaking is going to make a determination in a final rule at the end of that process what the model year 19 civil penalty rate will be. They can't know that now. None of us can know that now. So, if they were prudent, however, they would assume it's the higher amount, since that amount went through agency rulemaking already, and count on that. It went through rulemaking in a sense, Your Honor, inter-final rule. But let me just point out again that the agency has said in a different decision that has not been challenged in this case that the $5.50 rate is in effect during the period of reconsideration. So, presumably, the manufacturers— I can indicate that, too. Well, I don't think you can, Your Honor. It's not before the court. That's my point. They haven't challenged that decision, and that seems to be what they really are complaining about, but they brought the wrong case. And if I may just wrap this up, because I think it goes to your question about Abraham as well. Remember, in that case, there were a bunch of challenges brought in this court, and in the district court as well, against a variety of decisions throughout the process. And here, the petitioners have argued, have been pointing to the part of that case that talks about the delay of the effective date of the standards, not—and this is very different, of course—in that case. But the court didn't decide that question until it wrapped up all of the challenges to all of the agency decisions after the final rulemaking was complete. And so, I would suggest to Your Honor that in addition to the variety of options available here, including dismissal for lack of jurisdiction, remand without vacature, vacature, as Your Honor pointed out, an additional option that the court could consider is holding the case in abeyance pending the outcome of the final rule, and if a petition for review of that final rule is brought in this court— That's what you've already done. We don't have to do the same thing that NHTSA did, which is delay everything. Well, Your Honor, I guess my point is just that that's what this court effectively did in NRDC against Abraham. In other words, it waited to wrap all of the issues together and consider them in the context of the agency's final action, which is appropriate. That's what notice and comment rulemaking is for. So, if the court has no further questions, we'd urge either dismissal, denial, or if the court thinks— Or accommodations. Or holding the case for subsequent determination, as I just explained. All right. Thank you, Your Honor. So, I'm going to ask both of the advocates, the petitioners, if we vacate this rule, what happens then? Well, thank you, Your Honor. I think the clearest answer to that is it restores the effect of the August 2016 interim final rule, which set the penalty at $14. That's the one they're reconsidering, which they're allowed to reconsider, aren't they, with notice and comment? Well, they are allowed to reconsider it. It's a separate question of whether they're allowed to delay it pending that reconsideration. That's what before us is the delay. That's correct. You're not challenging reconsideration. Are you challenging the replacement of the penalty with the $5.50 old amount? Well, we will challenge that decision when the agency— if it reaches that determination at the conclusion of reconsideration. I do think it is inaccurate what the government is arguing, that we challenged the wrong document here. The only operative document in the record is the delay rule itself, which said— That's what you're challenging. And that is what we've challenged. What they were— If you would like to see us vacate, grant your petition and vacate that rule. Correct. My question is, where do we stand? Well, and where we stand there without the delay rule is what the agency did, not just in August of 2016, when it set the $14 penalty consistent with the statute, but then in December 2016, when it reaffirmed that $14 rate and then granted, in part, the manufacturer's reconsideration petitions and exempted two model years from that penalty rate. Correct. But that's the very rule that they are now reconsidering, they say. And you can't challenge that yet? Are you participating in that notice and comment? We are. We will be participating in that notice and comment process. But again, this is the exact argument that both the East Circuit and Clean Air Council and this Court and Abraham addressed, is what an agency does with the process of reconsideration or the conclusion of reconsideration is separate from what it is allowed to do with a rule that is already in effect. No, I agree. Do you think they have a right to reconsider it? Now? I think I'm just going to put that question off for the moment. I think some of our statutory arguments from the Inflation Adjustment Act... They can't even have the right to do it. That's correct. And that is what this Court held in Abraham. It looked at the statute in that case and found no right to reconsider. And I want to make a point about that statutory authority argument, which I think is critical. It is startling for the agency to come up and say that a statutory schedule set by Congress is something that the agency can disregard in the exercise of some other statutory authority. And this Court's cases have held to the contrary. I mean, Abraham dealt with an anti-backsliding rule that prevented substantive standards from being reversed. There's no such anti-backsliding rule in the NHTSA statute, is there? Well, I would disagree with that. I think when Congress set a schedule for increasing civil penalties, mandated an increase by 2016, and required annual adjustments every year thereafter, that is a version of an anti-backsliding rule for the civil penalty rate. There is no discretion in that statute to either disregard that increase or to reverse it, as the agency has done here. And the D.C. Circuit in the NRDC v. Riley case dealt with exactly this issue. There was a schedule there for certain emission standards the agency disregarded, and the D.C. Circuit relied on the schedule to say however compelling the reasons may be for exempting industry for those regulations. The schedule is what it is, and you have to comply with it. You can't delay a standard that has been finalized. Still on track with the 2019 model year, if we decided this case in the next few days? Well, we think there would be an effect on it, and the notion that it is insignificant is contradicted really by the manufacturer's own statements. In their briefs to this court, it's on pages 53 and 54 of the Global Automakers Brief, they say, and I'm quoting, they say immediate implementation of the final rule, which is a civil penalty increase, would also cause immediate economic consequences for these production design decisions. And what they say, and I'm quoting again, these consequences cannot be undone once model years are finalized and moved towards production. In other words, the manufacturers are in this case supporting the delay precisely because they do not want to make current production and design decisions based upon a penalty rate that they disagree with. And if it were truly insignificant, their presence in this case would be completely unnecessary. But at the last point, if I may, I just want to briefly touch on the arguments raised. I want to be clear that I understand what your view is of the situation that the auto manufacturers find themselves in. I mean, they are about to roll out in the fall these new models, which presumably they're working on now. And under your approach, where do they stand? How much financial jeopardy are they in? Well, to pay the penalties. That's right. I mean, what the manufacturers have told both Congress, the agency and this court are that in making a series of rolling decisions, and not just for 2019, to be clear, they're making decisions now that would also affect 2020, 21 and further model years. They take into account this future penalty rate because the purpose of the penalty is to induce them to comply with the CAFE standards. And the reason they want that penalty put off is so that they can make those decisions assuming the lower $5 and 50 penalty. The financial jeopardy that they face is in having a penalty that is closer in real value to what Congress intended in 1975. And that is nearly triple the amount of the penalty rate that they want to reinstate. They're in danger of complying with the law. Well, and that's right. And here the consequence of the penalty rate is just to comply with the CAFE standards, which is hardly a form of irreparable or cognizable injury. But again, if I may, the very last thing I want to say is about the suggestion that the Inflation Adjustment Act does not apply to the CAFE civil penalty rate. There are a number of problems with that. One is that it's inconsistent with 20 years of interpretation from this very agency. I mean, in 1997, the $5 and 50 rate was implemented because of an earlier application of the very same statute here. In other words, the rate that they are trying to reinstate is based upon the Inflation Adjustment Act. And in addition, even in the July 2007 delay ruling here, NHTSA acknowledged the application of the statute. And what it tried to invoke was, as they say here, an exception to that statute, but never disputed the statute applies. And the final point I want to say is about economic impact. It is incorrect that the agency did not consider economic impact. This is on page 28 of the joint appendix. The agency specifically looked at the impact of the higher penalty rate. It noted that, and I'm quoting, the impacts would be limited because the number of entities don't change who are affected by the penalty. And because even though the penalty is increasing by two and a half times, they expected that manufacturers, rather than paying the penalty, would simply change their technology standards and therefore not be faced with a full amount of that increase. So that analysis is in the record. It's sufficient to support what the agency did last year. Counsel, you have a couple of minutes as well. Thanks, Your Honors. Do you agree with Mr. Wu on what the status would be if we granted this petition and vacated the rule? That's correct. And to provide clarity, the court, I think, would behoove the court not only to vacate the unlawful suspension, but then also announce that the civil penalties rule has taken effect and declare that the applicable penalty rate for model years 2019 and after is $14. We vacate this delay rule, which is a final rule. I think we all agreed that this is... Well, you agreed. I don't know that Counsel for NHTSA agreed that it's a final rule. If we vacate that final rule for failure to comply with the APA and other reasons, does that automatically reinstate the December rule? It does. That rule would take effect as of its prior effect. This is just a delay of that rule. That's correct. And we vacate the delay, the rule goes into effect. That's exactly right. That's what happened in NRDC v. Abraham and these other cases involving unlawful suspensions. It vacates the unlawful suspension and the earlier rule takes effect when it was originally intended. There's also other district court decisions that have recently vacated unlawful suspensions by other agencies that we cite in our reply brief that have done exactly this and said exactly this. And we think that's important. Judge Pooler, you acknowledged a couple of times this case has been expedited. It's been expedited for a reason. I think the petitioners asked for expedition. That's correct. Environmental petitioners requested it and the court granted that and it did it for a reason, which is that time does matter here for model years 2019 and after. So I would encourage the court to rule as quickly as it possibly could and reinstate the $14 so that automakers do have as much time as possible to take that into account for their model year 29 vehicles. Your Honor is correct. Those vehicles will be out on the showroom floors and on the road soon, which is why our injury is imminent. And there are still tweaks that automakers can make. They can install more efficient air conditioners or little things like that that will make the model year 2019 vehicles more efficient. And as Mr. Rue pointed out, automakers are also continuing to design their model years 2020 and 21 fleets as well. And, you know, my opposing counsel has pointed out there's an ongoing reconsideration. That's correct. We are not challenging that yet. Are you appearing in that? We are. We're submitting comments in that. But what's so critical is that the agency has attempted to conflate those throughout this case. Those are separate actions. The suspension was unlawful needs to be needs to be vacated. The reconsideration will move forward. We will challenge it whenever there's a final rule. That I've heard from Mr. Byron that they they put back the 550 rule. Is that part of this rule? The delay or where does that come from? That's right, Your Honor. We think that's that's clearly the what the agency intended and thought that it was doing with the suspension rules. And that's clearly how interveners have understood the suspension rule as well. They understood the suspension to somehow. That's right. To reinstate a 550 rate. That's I mean, if you look at intervener's briefs, that's exactly how they're trying to justify the suspension on that ground. Could they have done that? Could the agency have done that? Reinstated the 550 rule without notice? Absolutely not, which is why why it's unlawful. So that's we do think it's important that the court not only vacate the unlawful suspension, but to provide clarity for any uncertainty that may be here to to clarify that the effective penalty rate for model years 2019 and after is $14. Thank you. Thank you all for very, very helpful argument. I very well agree.